## HOPE LUMBER CO. V. FOSTER & LOGAN HARDWARE CO.

Decided April 26, 1890.

1. *Sale of goods—When title passes—Delivery to common carrier.*

   A delivery of goods to a common carrier, in pursuance of the direction of the purchaser, is a delivery to the purchaser; by such delivery the title to the goods passes, and they are not subject to a subsequent attachment at the instance of a creditor of the consignor.

2. *Estoppel in pais.*

   To constitute an estoppel *in pais*, the party setting it up must show that the representation was made with intent to mislead or with gross negligence, and that on the faith of it he acted to his prejudice.

APPEAL from *Nevada* Circuit Court.

C. E. MITCHEL, Judge.

*Smoote, McRae & Arnold* for appellant.

1.  Where property has been ordered, and the party on whom the order is drawn consigns it to the party making the order, by delivery to a common carrier, in response to the order, the contract of sale is complete and the property passes to the consignee.    43 Ark., 453; 44 Ark., 556.

2.  If the laborers had a lien, and appellee succeeded to it, it cannot be enforced in this action.

3.  The conversation with White does not amount to an agreement or contract which could be enforced against appellant, and there was no consideration for it.

*Atkinson, Tompkins & Greeson* for appellee.

1.  The evidence shows that the Hope Lumber Company was not so much a purchaser as a factor.    The hands had the right to hold the bills of lading until their wages were paid, and this clearly evidences an intention on Duval's part to retain the title until it was paid for.    Delivery of the bill of lading carries with it the property.    45 Mo., 145; Daniel on Neg. Inst., sec. 1728.

2.  Appellant is estopped by the declarations of its agent in disclaiming all right to the lumber.    Bigelow on Estop. (4th ed.), p. 549; 2 Johns., 573; 39 Ark., 131; 15 Pick., 40; 3 Hill (N. Y.), 215; 4 Metc., 381; 8 N. H., 238; 44 Me., 414.

*Smoote, McRae & Arnold* in reply.

1.  The appellant is not estopped from claiming the property as its own.    The material elements of an estoppel *in pais* are wanting. Bigelow on Estop. (4th ed.), 552.    No one here was induced to act upon the statements of White, or the levy was already made.    The interpleader's affidavit and bond under Mansf. Dig., secs. 356, 391, cannot be confounded with a receiptor's receipt or delivery bond.  Bigelow, Estop., 551, note 3.    As to estoppel, see 40 Vt., 51; 93 U. S., 326; 10 N. E. Rep., 205; 57 Vt., 474; 57 Am.

Rep., note, 429–33; 33 N. W. Rep., 435; 39 N. W. Rep., 276; 99 N. Y., 407; 87 Am. Dec., 321.

The representation was not acted on. Appellee released no security, nor did Logan say he relied on anything White told him. H. & D., 89; H. & D., 439; 25 Am. Dec., 423 and note, p. 428; 70 Texas, 80; 18 Pac. Rep., 372; 2 El. & Bl., 9.

HUGHES, J. On the 6th day of August, 1888, the appellee sued John J. and Sallie Duval on account for $400, and had an attachment levied on three car loads of lumber, which attachment was sustained against defendants and from which they have not appealed.

The appellant filed its interplea claiming the property attached, and the court sitting as a jury found that the property did not belong to appellant, but to John J. and Sallie Duval, and dismissed the interplea; appellant excepted, filed a motion for a new trial, which was overruled, and he excepted and appealed. The motion for new trial is substantially that the circuit court erred in its findings of the facts and the application of the law.

The facts are that, in response to a letter from J. J. Duval asking the Hope Lumber Company if it could take the "whole cut" of his mill, the Hope Lumber Company sent Duval an order for lumber, specifying therein the dimensions of lumber it would take and the price it would pay for the same "F. O. B.," which meant "free on board" of cars at Prescott, Duval to pay for the loading of the lumber on the cars at Prescott, and the Hope Lumber Company to pay the freight, and, when order was filled, to pay Duval one dollar on each car for loading, Duval being authorized to draw on Hope Lumber Company for what money he might need. The bills of lading for the three car loads of lumber were made in name of J. J. Duval, and the cars were consigned to the Hope Lumber Company. The three car loads of lumber

were consigned to the Hope Lumber Company to fill in part the order above mentioned. Duval was at the time indebted to the Hope Lumber Company for money advanced him on lumber. He had arranged with the laborers who loaded his lumber on cars that they could retain the bills of lading until their wages were paid.

The agent of the appellee, learning that the laborers had possession of three bills of lading, paid them twenty dollars, which they said Duval owed them, and they delivered the bills of lading to him, which he took with the writs of attachment in the case and immediately went to Hope and to the lumber yard of the Hope Lumber Company, where he found the three car loads of lumber, one of which had been unloaded, and the other two of which were being unloaded, and by his direction the sheriff levied the writs of attachment on the lumber. This was on the 6th day of August, 1888.

Mr. White, the bookkeeper of the Hope Lumber Company and authorized to represent the company, after learning what had been done, told the agent of appellee that he did not want any trouble, and afterwards said that they did not claim the lumber, and that, if appellee would be responsible to Duval, they would settle for it as soon as checked up, which would be the next day. The next day the Hope Lumber Company gave bond and retained the lumber.

The agent of appellee was notified by the sheriff on the same day of the giving of this bond. Appellee's counsel contend that the Hope Lumber Company was not the purchaser of the lumber but a factor, and that, the laborers having possession of the bills of lading, the delivery of them to appellee for value carried the property in the goods covered thereby.

In our opinion the facts do not sustain this view of the case, but show on the contrary that the Hope Lumber Company was the purchaser of the lumber. The laborers had no title to the lumber, and if they might in any event have had a lien upon it, that question is not involved here.

1. Sale of goods —Delivery to carrier — When title passes.

The evidence shows that, before the levy of the attachments, the lumber had been delivered to the Hope Lumber Company at its lumber yard at Hope, and one car of it unloaded, and the others were being unloaded. The delivery of the lumber on board the cars at Prescott upon the previous order of the Hope Lumber Company and the consignment of the cars to it at Hope was a delivery to that company. *Burton & Townsend v. Baird & Bright*, 44 Ark., 556; *State v. Carl & Tobey*, 43 Ark., 353; Benjamin on Sales, secs. 181, 693; *Herron v. State*, 51 Ark., 133.

It is also contended by counsel for appellee that appellant was estopped to claim the lumber, as against it, by the declaration of Mr. White, the secretary and representative of the Hope Lumber Company, that it did not claim the lumber, and would pay the sheriff or appellee for it, if appellee would be responsible to Duval.

2. Estoppel *in pais.*

It is quite probable that White thought, when he made this statement, that the lumber belonged to Duval; but when soon afterwards he learned his mistake, the appellant determined to interplead and assert its title. It does not appear that this declaration influenced the sheriff not to levy on the lumber, for it was levied on before he saw White, it seems; nor to release it, for it was released upon the bond of appellant given under sec. 390 of Mansfield's Digest. Nor does it appear that by reason of this declaration appellee gave up any right, suffered any loss or disadvantage, or ceased or relaxed any effort to secure its debt. "A representation to create an estoppel must of course have been acted upon." *Farrell v. Higley*, H. & D., 89; *Thorn v. Bell*, H. & D. (Lalor's supplement), 430; *Railway v. Gordon*, 70 Tex., 80.

The primary ground of this doctrine is, that it would be a fraud in a party to assert what his previous conduct had denied, when on the faith of that denial others have acted. The element of fraud is essential either in the intention of the

party estopped, or in the effects of the evidence which he attempts to set up.   And it would seem that to the enforcement of an estoppel of this character with respect to the title to property, such as will prevent a party from asserting his legal rights, and the effect of which will be to transfer the enjoyment of the property to another, the intention to deceive and mislead, or negligence so gross as to be culpable, should be clearly established. *Wilson v. Roots*, 10 N. E. Rep., 205; *Earl v. Stevens*, 57 Vt., 474; *Guffey v. O'Reiley*, 88 Mo., 418; and note to same in 57 Am. Rep., 429-33; see also, *Conkey v. Hawthorne*, 33 N. W. Rep., 435; *Henderson v. McMahill*, 39 N. W. Rep., 276; *Almy v. Thurber*, 99 N. Y., 407; *Sturtevant v. Orser*, 82 Am. Dec., 321.

In *Howard v. Hudson*, 2 Ellis & B., 1 (75 E. C. L.), Lord Campbell said, "Like the ancient estoppel this conclusion (estoppel *in pais*) shuts out the truth; and is odious and must be strictly made out.   The party setting up such a bar to the reception of the truth, must show both that there was a willful intent to make him act on the faith of the representation and that he did so act."  Here the appellee fails in both.

For the want of testimony to support the findings of the circuit court, the judgment in this case is reversed, and the cause remanded.