## KENNY et al. v. McKENZIE.

Laws 1903, p. 1, c. 1, provides that any instrument affecting real property, which was prior to January 1, 1903, copied into the proper book of record, shall be deemed to impart, after that date, notice to subsequent purchasers and incumbrancers, notwithstanding any defect in the execution of the instrument or in the certificate of acknowledgment. Held that, where the assignment of a mortgage was defective and the acknowledgment invalid, the act did not validate foreclosure proceedings by advertisement had several years prior to the enactment of the act.

That mortgagors having no notice of a defect in the assignment of the mortgage acquiesced in foreclosure proceedings under a belief that the same were valid, and after sale delivered up possession of the premises, did not estop them on ascertaining the truth from asserting their rights, even though the purchaser at the foreclosure sale paid full value for the premises, and had no knowledge of the mortgagor's claim.

(Opinion filed, April 6, 1909.)

Appeal from Circuit Court, Brown County. Hon. J. H. McCoy, Judge.

Action by W. G. Kenny and another against K. McKenzie. Judgment for defendant, and plaintiffs appeal. Reversed.

*Taubman, Williamson & Herreid,* for appellants.

The assignment of the mortgage was invalid in that it was not properly acknowledged so as to entitle it to record, and was not properly of record, and that the pretended assignee had no authority to foreclose the mortgage by advertisement, and such foreclosure and proceedings had thereunder were void, and title to said real estate remained in the plaintiffs. Common v. Deming, 3 S. D. 426; Holt v. Metropolitan Trust Co., 11 S. D. 456; Civil Code, 974; Hickey v. Richards, 3 Dak. 345. If the foreclosure was void before Chapter 1, L. 1903, became a law, then up to this date plaintiffs were the lawful owners of the land in question. The Legislature could not by a retroactive, curative act take away vested rights—in this particular case the legal title to real estate—even if

such had been its intention. Dever v. Cornwell, 10 N. D. 123, 86 N. W. 227. All of the following elements must be present in order to an estoppel by conduct: 1. There must have been a representation or a concealment of material facts. 2. The representation must have been made with knowledge of the facts. 3. The party to whom it was made must have been ignorant of the truth of the matter. 4. It must have been with the intention that the other party should act upon it.' 5. The other party must have been induced to act upon it. Bigelow on Estoppel, p. 437, 2d Ed.; Eickelberg v. Soper, 1 S. D. 567; Gjerstadengen v. Hartzell, 83 N. W. 230; Boggs v. Mining Co., 14 Cal. 368; Story's Equity, Sec. 391. An equitable estoppel can not arise where the facts are known by both parties, or both have the same means of ascertaining the truth. 10 Ballard Real Property, Sec. 236. Defendant has been a mere trespasser, and cannot claim that the owners are estopped by mere delay in ousting him, to seek any remedy, appropriate to the case. 2 Ballard, Sec. 233. The plaintiffs had a right to assert their title at any time within twenty years under the statutes of limitations of our state. Sec. 44, Code Civ. Proc.

*Campbell & Taylor*, for respondent.

Chapter 1 of the Laws of 1903 cures this defective acknowledgment to the assignment of the mortgage. Plaintiffs are not innocent incumbrancers or purchasers, and under such a curative statute where no rights of third persons have vested in the meantime the instrument is to be regarded as having been properly acknowledged originally. 1 Cyc. 609; East v. Pugh, 71 Ia. 162, 32 N. W. 309; Ferguson v. Williams, 13 N. W. 49; Fogg v. Holcomb, 21 N. W. 111; 1 Am. & Eng. Enc. of Law, 2d Ed. 567. If a man knowingly, although he does it passively, by looking on, suffers another to purchase and expend money on land under an erroneous opinion of title without making known his own claim, he shall not afterwards be permitted to exercise his legal rights against such person. Shelby v. Bowden, 16 S. D. 531, 94 N. W. 416; Wompole v Kountz, 14 S. D. 334; Murphy v. Da Foe, 18 S. D. 42, 99 N. W. 86; Diamond v. Manheim, 63 N. W. 495; Wendell v. Vanrensselaer, 1 John Chan. 344; Kirk v. Hamilton, 102 U. S. 68; Erwin v. Lowry, 7 How. U. S. 172; Close v. Glenwood Cemetery, 107 U. S. 466;

State v. Graham, 21 Neb. 329; Gillispie v. Sawyer, 15 Neb. 536; Pomeroy's Eq. Jr., Sec. 965; Simmons v. Burlington & C. R. R. Co., 159 U. S. 278.

CORSON, J. This action was instituted by the plaintiffs to quiet title to a quarter section of land in Brown county. Findings and judgment being in favor of the defendant, the plaintiffs have appealed. The complaint is in the usual form. The defendant pleads title in himself and also an estoppel on the part of the plaintiffs.

It is disclosed by the record: That in December, 1889, the plaintiffs, being then the owners of the quarter section of land in controversy, executed to the Minnesota Mortgage Company a mortgage upon the same to secure a note of $500. This company will hereafter be designated as the "Minnesota Company." That in January, 1890, the said Minnesota Company made a purported assignment of the first mortgage to the Canadian & American Mortgage & Trust Company, Limited, which company will hereafter be designated as the "Canadian Company." The purported assignment was executed and acknowledged by a director of the company, and was so certified by the notary. The Canadian Company as assignee proceeded to foreclose said mortgage by advertisement by the sale of the premises in June, 1896. There being no redemption, in August, 1897, the sheriff executed a deed of said premises to the said Canadian Company, assignee. In December, 1901, the said Canadian Company, grantee under the said sheriff's deed, contracted to sell the same to the defendant herein. Subsequently the said premises were conveyed to this defendant. In the spring of 1897 one of the plaintiffs, T. R. Kenny, being in possession of the land in controversy, put in a crop and farmed it as usual, the other plaintiff since the fall of 1890 being a resident of the Black Hills, and, so far as the record disclosed, he never gave his brother authority to act for him as his agent. In August, 1897, defendant, McKenzie, representing himself as the agent of the Canadian Company, commenced an action in replevin for the crops on the land which the plaintiff T. R. Kenny was harvesting. A settlement

was had by which T. R. Kenny received a portion of the value of the crops, and that action was dismissed. The court finds the facts above stated, and also finds: "That said plaintiffs had full knowledge of said foreclosure sale hereinbefore set forth at or about the time said sale took place, and in no manner offered to redeem from such sale or to contest the validity thereof, and that very shortly after the year for redemption from such sale had expired, and the sheriff's deed had issued therefor, as hereinbefore set forth, the plaintiffs voluntarily turned over and surrendered to the purchaser at said foreclosure sale the possession of said real estate, and that at all times since said purchaser and its grantees, including this plaintiff, have been in the open, actual, and notorious possession of said real estate and of all thereof, and have regularly farmed and cultivated the same since the issuance of said sheriff's deed with the full knowledge of these plaintiffs, and that prior to the commencement of this action said plaintiffs never made or sought to make or assert any claim to said real estate or any part thereof. (13.) That at the time of the purchase of said land by this defendant, as hereinbefore set forth, he paid full value therefor, and had no knowledge that these plaintiffs had or claimed to have any interest whatever therein. (14) That since surrendering the possession of said real estate in 1897 the plaintiff W. G. Kenny has at all times resided in the immediate vicinity of said real estate and adjoining the same, and has had full knowledge at all times that the purchaser at such foreclosure sale and its grantees were in possession thereof, claiming to own the same, and has never prior to the commencement of this action offered any protest or made any claim thereto or of any interest therein. (15) That, relying upon its title acquired as aforesaid, the purchaser at said foreclosure sale did during the year 1901 pay off, satisfy, and discharge the said mortgage upon said real estate for $75.61, above described, with interest accrued thereon."

From these findings the court concludes as follows: "(1) That the plaintiffs nor either of them have any right, title, or interest in or lien upon said land, or any part thereof. (2) That the defendant, K. McKenzie, is the full, absolute, and fee-simple owner of said land, and of every part thereof, free from all claims

of said plaintiffs to the same, or to any part thereof. (3) That the various curative acts enacted by the Legislature of the state of South Dakota prior to the commencement of this action have cured and made legal and valid any and all irregularities in the certificate of acknowledgment attached to and being a part of the assignment of the mortgage foreclosed as recited in the foregoing findings of fact. (4) That, by reason of the facts, conduct, and acquiescence of the plaintiffs, they have abandoned and are estopped to claim any right, title, or interest in or lien upon the real estate described in the foregoing findings of fact. (5) That the defendant, K. McKenzie, is entitled to judgment decreeing him to be the owner of said land and of every part theref."

It is contended by the plaintiffs and appellants that the assignment of the mortgage from the Minnesota Company to the Canadian Company was invalid, and was not properly acknowledged so as to entitle it to record, and was not properly of record, and that, therefore, the pretended assignee had no authority to foreclose the mortgage by advertisement and such foreclosure and proceedings had thereunder were void, and that no title passed by reason of such foreclosure, but the title remained in the plaintiffs and has never been divested.

It is insisted on the part of the respondent in support of the conclusion and judgment of the learned circuit court that, assuming that the assignment of the mortgage was irregular, the same was cured by virtue of the provisions of chapter 1, p. 1, Laws 1903, and also that the plaintiffs are estopped from maintaining this action by reason of their acts and declarations as found by the court in the findings heretofore copied in the statement of facts in this opinion. The original title of the plaintiffs seems to be unquestioned, and the proceedings in foreclosing the first mortgage of $500 and the execution of the sheriff's deed thereunder seems to be conceded to be regular, except that the assignment was invalid, being made by a director, and the acknowledgment invalid under the decisions of this court in Cannon v. Deming, 3 S. D. 426, 53 N. W. 863; Holt v. Metropolitan Trust Co., 11 S. D. 456, 78 N. W. 947; Erickson v. Conniff, 19 S. D. 41, 101 N. W. 1104. See, also, Cooper v. Harvey, 21 S. D. 471, 113 N. W. 717. The ac-

knowledgment of the assignment was clearly insufficient under the decisions above cited, and the foreclosure, therefore, by advertisement, was invalid unless cured by the curative statute referred to. The effect of the curative statute of 1903 was involved in the case of Cooper v. Harvey, supra, and in that case the foreclosure proceedings were had some years prior to the passage of the act, and the curative act was therefore, held inapplicable, and did not affect the foreclosure proceedings had prior to the passage of the curative act, and in the opinion this court says: "In our opinion the curative act did not have the effect to make valid the proceedings to foreclose the Watt mortgage. The proceedings were had in 1890 and 1891 over 12 years prior to the passage of the curative act. To give the construction to the curative act of 1903 contended for by the plaintiff would be to transfer the legal title of property owned by one party to another, and this a curative act cannot do. Had the proceedings to foreclose the Watt mortgage occurred subsequent to the curative act of 1903, the defective acknowledgment to the assignment of the mortgage might under the provisions of that act have been disregarded, and the assignment would have been as effective as though it had been properly acknowledged, but to construe the act as going further than this would be carrying it beyond the effect of the language used in the act or the intention of the Legislature in passing the same. When the foreclosure proceedings were had, such an assignment was invalid and the proceedings thereunder were void. It would not be competent, therefore, for the Legislature by a subsequent curative act to render those void proceedings valid." Following the decision of this court, therefore, in that case, it necessarily follows that the curative act referred to did not have the effect of making valid the foreclosure proceedings had several years prior to the enactment of the act in question. The foreclosure proceedings being void, no title passed to the plaintiffs by virtue of the same, and the curative act referred to did not have the effect of making valid those proceedings. Dever v. Cornwell, 10 N. D. 123, 86 N. W. 227; Findlayson v. Peterson, 5 N. D. 587, 67 N. W. 953, 33 L. R. A. 532. In the former case the learned Supreme Court of North Dakota says: "Besides, it is well settled that it is beyond the power of

the legislative branch of the government to transfer title of land by mere legislative fiat." And in the latter case the court says: "We have carefully examined the whole law on this subject of curative legislation, and we have been unable to find an adjudication which has taken a position so extreme as we would be compelled to take should we allow this statute to have a retroactive effect, and thus validate an absolutely void sale. * * *" The act in question reads as follows: "Any instrument affecting real property which was, previous to the first day of January, 1903, copied into the proper book of record, kept in the office of any register of deeds, shall be deemed to impart, after that date, notice of its contents to subsequent purchasers and incumbrancers, notwithstanding any defect, omission or informality in the execution of the instrument, or in the certificate of acknowledgment thereof, or the absence of any such certificate; but nothing herein shall be deemed to affect the rights of purchasers or incumbrancers previous to that date. * * *" It will be observed that by the provisions of that section that any instrument affecting real property which was previous to the first day of January, 1903, copied into the proper book of record, shall be deemed to impart after that date due notice of its contents, notwithstanding any defective omission or informality in the execution of the instrument. It will be noticed that it does not purport to make valid the irregular proceedings taken prior to that time, nor does it purport in any manner to affect prior vested rights, and to give it the effect contended for by the respondent in this case would clearly extend the provisions of the section to cases not contemplated by the Legislature or intended by it to be affected by the act.

The contention by the respondent that the plaintiffs are estopped from asserting any title to the premises in controversy by reason of their acts, conduct, and declarations as found by the trial court is in our opinion untenable. Counsel relies mainly upon the decision of this court in the case of Shelby v. Bowden, 16 S. D. 531, 94 N. W. 416, as sustaining their contention, but in our view that case cannot be regarded as an authority in support of respondent's contention. It will be noticed in that case that this court held that a power of sale contained in the mortgage which

had been omitted from the record by the recording officer was held in law for the purpose of that case as recorded, and hence the decision of the court was right in holding that the mortgage was properly foreclosed by advertisement. Again, it appears in that case from the findings that the mortgagor had by deed conveyed the premises to the defendant in the action, and hence the mortgagor was estopped by deed from claiming any title to the premises, and the plaintiff claiming under the mortgagor was concluded by that conveyance. The doctrine, therefore, of equitable estoppel, was not directly involved in that case, but, even if it had been involved, the facts found by the trial court in that case were very different from those found by the trial court in the case at bar. In the Bowden Case the court found that the mortgagor who executed the mortgage with power of sale therein was bound to know the contents of the instrument he had executed; and hence, knowing that there was a power of sale in the mortgage, and that the mortgage could be properly foreclosed by advertisement, and was in fact so foreclosed, he had full knowledge of his rights in the premises. In the case at bar, however, it is not found by the court that these plaintiffs or either of them had any knowledge of the defect in the assignment of the mortgage by the Minnesota Company to the Canadian Company as they were not parties to that assignment, and therefore during the time that they acquiesced apparently in the possession and claim of the Canadian Company in the possession of the premises they had no knowledge of their own rights, and that the title of the property still remained in them, notwithstanding the attempted foreclosure of the mortgage by advertisement. And it clearly appears from the evidence that as soon as they became advised that the foreclosure by advertisement was invalid, and that they still retained the legal title to the property, they proceeded at once to commence the present action. In the case at bar the defendant had the same means of knowledge as to whether or not the foreclosure was valid and legal as to plaintiffs. The rule, therefore, that the party sought to be estopped was acting with a full knowledge of his own rights in the premises, and that the party seeking to avail himself of this estoppel had no means of ascertaining the true facts, does not exist in the case at bar. The

fact, therefore, that the plaintiffs under the belief that the proceedings had by the Canadian Company in foreclosing the mortgage was legal and valid, and apparently acquiesced in the proceedings and delivered up possession of the premises upon that theory, did not bind the plaintiffs, as they were acting upon a mistaken view of their rights in the premises, and under the belief that the proceedings were regular and not void. .

It would be carrying the doctrine of estoppel all together too far and beyond the rules as laid down by the authorities to hold that the party sought to be estopped is concluded when he is acting under a mistaken belief as to his rights in the premises. In the leading case of Biddle Boggs v. Merced Mining Co., 14 Cal. 279, it is laid down as one of the conditions upon which an estoppel can be based "that the party making the admission by his declarations or conduct was apprised of the true state of his own title"; and the second is "that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud"; and third, "that the other party was not only destitute of all knowledge of the true state of the title but of the means of acquiring such knowledge"; and, fourth, "that he relied directly upon such admission and will be injured by allowing its truth to be disproved." See, also, Bigelow on Estoppel, p. 439; Brandt v. Virginia Coal & Iron Co., 93 U. S. 326, 23 L. Ed. 927; Brigham Young Trust Co. v. Wagner, 12 Utah, 1, 40 Pac. 764, 8 Ency, Pl. & Prac. 10, part. 2; Ergenbright v. Henderson, 72 Kan. 29, 82 Pac. 524; Davis v. Davis, 26 Cal. 23, 29, 85 Am. Dec. 157; Page v. Smith, 13 Or. 410, 10 Pac. 833; Buck v. Milford, 90 Ind. 291; Meyendorf v. Frohner, 3 Mont. 282; Lumber Co. v. Hardware Co., 53 Ark. 196, 13 S. W. 731. It is true that the trial court found that plaintiff had full knowledge of such foreclosure sale, and that plaintiffs voluntarily turned over and surrendered possession of said estate, and that the grantees under such foreclosure sale had been in the open, actual, and notorious possession of said real estate; that the defendant paid full value therefor, and had no knowledge that these plaintiffs had, or claimed to have, any interest whatever therein, and that the plaintiff W. G. Kenny had at all times resided in the immediate vicinity of the

property. The court, however, nowhere finds that the plaintiffs during the time that they so remained silent or apparently asquiesced in the transfer of the title to the grantors of the defendant knew of the true state of their own title, and that under the law they still retained the legal title to the property, subject, of course, to the mortgages which they had executed.

Our conclusion is that under the findings of the court the plaintiffs are not estopped from asserting their rights as legal owners of the property in controversy, as it is quite clear not only from the absence in the findings of fact that they had no knowledge of their rights, but it clearly appears from the evidence, what·ever acts they did or whatever statements they made in regard to the property they were done and made without a knowledge on their part of their legal rights in the premises, and that they were not guilty of negligence in not sooner ascertaining the true state of the title, which, as we have seen, remained in them, notwithstanding the purported foreclosure proceedings.

The views herein expressed lead to a reversal of the judgment and order denying a new trial, and the same are therefore reversed.

SMITH and McCOY, JJ., not sitting.