LOCKETT *v.* WESTERN ASSURANCE COMPANY.

4-3888

Opinion delivered June 10, 1935.

*Jay M. Rowland,* for appellants.

*Verne McMillen,* for appellees.

SMITH, J. The preponderance of the testimony in this case establishes the following facts: Mrs. S. J. Lockett and Melvin, her son, borrowed $800 on April 16, 1931, from the National Park Building & Loan Association, of Hot Springs. The loan was evidenced by a note of even date, and was secured by a mortgage on certain lots in Hot Springs, the title to which was in Mrs. Lockett. When the loan was made, a policy of fire insurance was written covering a building on one of the lots by John Adkins, who was the manager of the Security Insurance Agency. On July 23, 1931, another fire insurance policy was issued on the same property by Adkins with a mortgage clause to the loan association. On June 30, 1932, the Tri-States Savings & Loan Association purchased all the assets of the National Park Building & Loan Association, including the note and mortgage executed by appellants.

Some time prior to July 23, 1932, Adkins talked with Hickman, who was the agent for both the Western Assurance Company and the Tri-States Savings & Loan Association, in regard to the issuance of a renewal policy of fire insurance covering Mrs. Lockett's property. Appellants insist that Adkins proposed to renew and carry the insurance, but was told by Hickman that the Tri-States Association preferred to have the insurance written by a company of its own selection. It is insisted also that the mortgage required the owner thereof to carry insurance on the property for the benefit of the mortgagor, and that, in addition to this obligation, the mortgagee had assumed to do so, and pursuant to that understanding, had charged appellants with the amount of the premium necessary to insure the property for one year for the amount of $800.

The testimony does not, in our opinion, sustain any of these contentions. Hickman testified that, when Adkins brought the policy to him, he told Adkins the Tri-States Association would accept the renewal if Adkins would look to Mrs. Lockett to pay the premium, otherwise the Tri-States Association preferred to have the insurance written through Hickman's agency. Adkins did not accept the proposition. The testimony is undisputed that Hickman attempted to procure the insurance, and he wrote a policy in the Western Assurance Company, which he represented, for $800, covering the mortgagor's interest, with a mortgage clause in favor of the mortgagee. After this policy had issued, the insurer, after an investigation of the risk, directed Hickman to cancel the policy. Hickman then procured a similar policy to be written in the Globe & Rutgers Insurance Company, but that company later required its agent to cancel it. Mrs. Lockett conveyed the property to her son, Melvin, who was advised by Hickman that he was unable to procure insurance for the benefit of the mortgagor. Hickman also so advised Searcy, the secretary of the Tri-States Association. Irel J. Reaves was State agent of the Western Assurance Company, and Searcy asked him if the Tri-States Association could procure any insurance on the Lockett property, and Mr. Reaves

told Searcy that he could only insure the mortgagee's interest, and would do that only with a subrogation clause attached to the policy. That policy was written, and to it was attached a subrogation clause reciting that the insurance covered only the interest of the mortgagee, and that, in the event of the payment of any loss, the insurer should be subrogated to all the rights of the party to whom the payment of loss was made ''under all securities held as collateral to the mortgage debt,'' and should be entitled to an assignment and transfer of the mortgage and all other securities. The policy was for $600 only, and the premium thereon was $8.22, and on the day before it expired the property insured was destroyed by fire. After the fire occurred the Western Assurance Company paid the Tri-States Savings & Loan Association the sum of $466.13, the amount then due under the mortgage, and took an assignment of the note and mortgage.

This suit was brought by the Locketts to recover, not only the insurance, but to recover altogether the sum of $800, the amount of the original policy; this upon the theory, as has been said, that the mortgage required the mortgagee to carry the insurance, and that that obligation had actually been assumed, and the premium for the insurance had been charged against the property, and thereby became a part of the debt which the mortgage secured.

The mortgage did not require the mortgagee to insure the property. That duty was imposed upon the mortgagor. It did authorize the mortgagee to insure the property for the benefit of the mortgagor, subject to the mortgagee's interest, in the event the mortgagor did not procure and carry insurance; but this was a provision for the mortgagee's benefit. It was not an obligation imposed.

The testimony does not establish the fact that a contract to that effect was entered into. As tending to support the contention that there was such a contract, it is insisted that the mortgagors were charged with a premium sufficient to cover $800 insurance for a year and the interest thereon for that time.

It does appear that the following charges were made on the books of the Tri-States Association:

"Premium on Western Assurance Company policy for $600 .........................................................$8.22

"Premium on Globe & Rutgers policy............... 1.95," but it was explained by the secretary of the Tri-States Association that these items were never presented to or paid by the Locketts, nor were they expected to pay them. It was necessary to charge them somewhere to keep the record straight, and for identification they were charged to the Lockett loan.

That a mortgagee has the right to insure his separate interest, and to enter into a contract to assign his claim to the insurer upon payment of a loss, is not questioned, and that such a right exists is clearly settled by the numerous authorities cited in § J of the chapter on Subrogation in vol. 7 of Cooley's Briefs on Insurance, p. 6716. That nothing else was done or attempted is established by the testimony.

The court denied the prayer of the complaint filed by the Locketts against the loan association and the insurance company, and upon the cross-complaint decreed foreclosure of the mortgage in favor of the insurance company by way of subrogation for the amount of the fire loss which had been paid to the Tri-States Association, the owner of the mortgage and the note which it secured. This decree is correct, and it is therefore affirmed.