Henry MANN and Joyce Mann, His Wife, Plaintiffs,

v.

CHARTER OAK FIRE INSURANCE COMPANY, Defendant.

No. LR-60-C-155.

United States District Court
E. D. Arkansas, W. D.

Aug. 16, 1961.

Cooper Jacoway, Little Rock, Ark., for plaintiffs.

Robert S. Lindsey, Wright, Lindsey, Jennings, Lester & Shults, Little Rock, Ark., for defendant.

HENLEY, Chief Judge.

This is a suit on a fire insurance policy covering a certain residence in Little Rock, Arkansas, which residence was totally destroyed by fire on March 21, 1960. The insureds named in the policy are the plaintiffs, Henry Mann and Joyce Mann, and the policy which was issued by defendant, Charter Oak Fire Insurance Company (Charter Oak), contained a standard mortgage clause in favor of First Federal Savings & Loan Association of Little Rock (First Federal) to which plaintiffs were indebted at the time the policy was issued.

The cause has been tried to the Court and briefed. This memorandum incorporates the Court's findings of fact and conclusions of law.

The facts, most of which have been stipulated, are substantially undisputed and may be summarized as follows:

Plaintiffs are citizens of Arkansas. Defendant is a Connecticut corporation authorized to do business and doing business in Arkansas. The amount in controversy, exclusive of interest and costs, but including plaintiffs' demand for a statutory penalty and attorney's fee,[1] is in excess of $10,000

In October 1959 plaintiffs became indebted to First Federal in the amount of $8,000, which indebtedness was secured by a mortgage on the property on which their home was located. The mortgage contained standard provisions requiring the mortgagors to carry sufficient insurance to protect the mortgage debt, and authorized the mortgagee to procure insurance should the mortgagors fail to do so. The mortgagee also had the right to physical possession of the insurance policy should mortgagors obtain their own insurance.

When the mortgage was executed, plaintiffs in fact had adequate insurance coverage with Trinity Universal Insurance Co. (Trinity), a fact which was known to First Federal. First Federal called on plaintiffs on several occasions to deliver the Trinity policy to it, as required by the mortgage, but for some reason plaintiffs failed to do so.

At all times here pertinent First Federal was managed by Howard C. Johnston, its executive vice-president, and by H. Charles Johnston, its secretary-treasurer. The Johnstons were also in the insurance business operating as Johnston Insurance Agency. The agency occupied the same building as did First Federal. Johnston Insurance Agency was an agent for Charter Oak, and the general agent for Charter Oak at Little Rock was Shepherd & Co. The agent of Trinity who sold plaintiffs their policy with that company was Tillo Bill Jackson of Little Rock.

In the latter part of February 1960, First Federal, having been unable to obtain possession of the Mann policy, decided to secure independent insurance, and directed the Johnston agency to write such insurance in the amount of $8,000, the principal amount of the loan. The Johnston agency procured the issuance of the policy in suit by Shepherd & Co. The policy was countersigned by the Johnston agency and delivered to First Federal. Said policy contained no prohibition against other insurance. No premium was demanded or paid when the policy was delivered to First Federal, and in fact no premium has ever been paid, although by amendment to their complaint plaintiffs recognize that the first premium installment

---

1. Ark.Stats.1947, Cum.Supp. § 66–3238.

of $96 should be deducted from their recovery, if any.

On February 25, 1960, H. Charles Johnston, acting for First Federal, wrote Mr. Mann as follows:

"Since we have not received an insurance policy on your home * * I am this date writing a policy to cover you on same. If you do have a policy on the house, please forward it to me immediately so that our policy can be cancelled. If you would like for us to continue writing the policy, you may submit your policy for cancellation.

"Please see that your two payments that are now delinquent on the house are sent to us as soon as possible."

The Trinity policy held by the Manns, unlike the policy issued by Charter Oak, contained an absolute prohibition against other insurance on the premises. Whether or not Mann knew of this prohibition at the time, it appears that he did not want two policies on the house, and he requested his agent, Jackson, to get the matter straightened out. Jackson contacted Douglas Wright, an employee of First Federal, by telephone and indicated to him that the Charter Oak policy should be cancelled since the Manns were covered by the Trinity policy. On February 29, 1960, Jackson followed up his telephone conversation with a letter addressed to Wright, which letter, insofar as here pertinent, is as follows:

"Enclosed please find copy of Mr. Mann's Homeowner policy which I have certified, as the original policy was delivered to Henry back in August, and evidently he has lost same.

"Since Mr. Mann has this policy in force, with mortgage clause to First Federal, he has no need for the policy that Mr. Johnston has written, so it should be cancelled.

"Also, you show a return premium due Henry under a builder's risk policy that should be returned to Henry also."

The parties have stipulated that Mr. Wright has no recollection of receiving that letter, and the existence of the letter and its contents were not made known to the Johnston agency or to Shepherd & Co. until on or after March 24, 1960, by which time the insured premises had been destroyed. The policy was finally surrendered by First Federal and was cancelled sometime in April 1960.

The loss which occurred on March 21, 1960, was adjusted by John Baird, of the General Adjustment Bureau of Little Rock, acting for Trinity and not for Charter Oak, although Charter Oak was aware of the loss and of the investigation.

Baird knew that the Trinity policy prohibited other insurance, and he raised with Mann the question of whether the existence of the Charter Oak policy absolved Trinity from liability on its own policy. It should be observed at this point that the Trinity policy was in the sum of $15,000, almost twice the amount of the Charter Oak policy.

Mann informed Baird that he had nothing to do with ordering the Charter Oak policy, that when he learned of its existence, he saw no need for it and instructed his own agent to procure its cancellation, and that he intended to make no claim under it. In connection with his claim under the Trinity policy Mann executed a sworn proof of loss reciting that he had no other insurance.

It was stipulated that if the Trinity agent, Jackson, were called as a witness he would testify in accordance with a written statement executed by him on April 20, 1960, a copy of which statement is attached to the stipulation as an exhibit. That statement is, in part, as follows:

"* * * After the fire on the 21st of March, Henry Mann said that he might have another policy on the house with 1st Federal. I told him that I had instructed them to cancel their policy, but even if they had not done so, the policies would

**608**

simply pro-rate on the loss. Henry in no way indicated that he was going to try to collect the face amount of each policy. However, about 10 days ago he told me that he had been contacted by a lawyer and was told he could collect the full amount of both policies. * * * I told him he certainly wouldn't want to do this, and he replied that he was not going to do it, but that he just wanted to tell me some of the things he found out. Nothing more has come of this as far as I know. * * *"[2]

Trinity paid Mr. and Mrs. Mann the full $15,000 called for by the Trinity policy, and the obligation to First Federal was discharged in full either out of the proceeds of the policy or by means of other funds available to plaintiffs. Thereafter, Mann made demand on Charter Oak under the policy in suit, and when payment was refused, this action was instituted. The suit was filed originally by Mann alone, but later Mrs. Mann was made a party plaintiff. The defendant denies all liability under the policy.

The case having come to issue, a pretrial conference was held, and in the course of the conference it was agreed that the issues in the case are as follows:

"a. Whether the policy of insurance issued by the defendant ever was a contract of insurance.

"b. Whether there was an effective cancellation of the policy before the fire.

"c. Whether the prohibition of other insurance contained in the policy issued plaintiff by Trinity Universal Insurance Company prevents plaintiff from recovering in this action."

With regard to those issues it is the position of the plaintiffs that the Charter Oak policy was a valid and binding contract of insurance at the time of the fire, that the policy was never cancelled effectively prior to the fire, and that the

prohibition of other insurance contained in the Trinity policy and the receipt by plaintiffs of the proceeds of that policy have nothing to do with their right to recover against Charter Oak.

Defendant contends, on the other hand, that the policy in suit was never a contract of insurance, but that if it was it was cancelled prior to the fire, and, further, that the conduct of Mann after the loss in connection with the Trinity policy and his receipt of the proceeds of that policy estop plaintiffs from proceeding against Charter Oak.

Since this is a diversity case, Arkansas law governs.

**I.**

Under Arkansas law, a contract of insurance is formed when the parties have agreed upon the following essential elements:

1. The subject matter of the insurance.

2. The risk insured against.

3. The amount of insurance.

4. The duration of the risk.

5. The premium to be paid.

New Hampshire Fire Insurance Co. v. Walker, 178 Ark. 319, 11 S.W.2d 772; Carolina Casualty Insurance Co. v. Helms, 8 Cir., 248 F.2d 268, 271–272; 29 Am.Jur. Insurance, § 192.

The Court finds that First Federal and Charter Oak agreed on those essential elements in February 1960, and their agreement was incorporated into a written policy of insurance which was delivered to First Federal as an effective and binding agreement. First Federal intended to obtain effective insurance on the Mann property, and Charter Oak's agents intended to provide such insurance.

As stated, the Charter Oak policy did not prohibit other insurance, and First Federal had been advised more than once that the Manns had insurance. The Johnston letter to Mann, above

2. Plaintiffs' counsel in this case is not the attorney who purportedly contacted

Mann and advised him that he could collect the full amount of both policies.

quoted, recognized at least the possibility that the Manns had coverage, and said letter makes it plain that First Federal had obtained insurance without regard to the existence of any other policy held by the Manns, although Johnston expressed a willingness to cancel the Charter Oak policy if Mann so desired and if Mann was willing to surrender possession of his own policy to First Federal. Further, irrespective of any insurance held by the Manns, the mortgagee had an insurable interest in the premises and had an independent right to obtain insurance to protect its security. Lockett v. Western Assurance Co., 190 Ark. 1135, 83 S.W.2d 65; 29 Am.Jur., supra, § 457.[3]

■ The policy in suit did not make advance payment of the first installment of the premium a condition precedent to the effectiveness of the coverage, and the general rule is that in the absence of such a policy provision pre-payment of initial premium is not a condition precedent to the policy's becoming effective, and that ultimate non-payment of premium simply gives the company a right to cancel. 29 Am.Jur., supra, § 222; 44 C. J.S. Insurance § 270; Tarleton v. De-Veuve, 9 Cir., 113 F.2d 290, 132 A.L.R. 343. It is clear here that the parties did not intend that actual payment of the first installment of the premium should be a condition precedent to coverage. Rather, the evidence discloses a sale of the policy on credit, a most common arrangement. Where a policy is so sold and delivered, and a loss occurs before the premium is paid, the company is liable for the loss, but may deduct the unpaid premium from the policy proceeds. Home Fire Insurance Co. of McAlester, Oklahoma v. Stancell, 94 Ark. 578, 127 S.W. 966; Pacific Mutual Life Ins. Co.

v. Carter, 92 Ark. 378, 123 S.W. 384, 124 S.W. 764; American Employers' Liability Ins. Co. v. Fordyce, 62 Ark. 562, 36 S.W. 1051.

■ The Court concludes, therefore, that the policy issued by Charter Oak was a binding and effective contract of insurance, and that it was in force at the time of the fire unless it was cancelled prior to that time. The policy covered all interests in the property, and when the loan was discharged the Manns became the beneficial owners of the policy and entitled to enforce it. Hence, defendant's first contention is rejected.

## II.

Nor can the Court agree with defendant that the policy was cancelled before the fire.

■ ■ The policy provided that it might be cancelled at any time at the request of the insured. Obviously, it was contemplated that the request for cancellation should be communicated to the defendant or to one of its agents. A completely uncommunicated desire for cancellation or a request for cancellation communicated to some third person would not be sufficient. See 45 C.J.S. Insurance § 458, pp. 116–117, and cases there cited. It is established law in Arkansas that, where an insurance company seeks to cancel a policy by the giving of notice as authorized by the instrument, the notice must be communicated to the insured or to his authorized agent, otherwise the attempted cancellation is ineffective. Merrimack Mutual Fire Ins. Co. v. Scott, 219 Ark. 159, 240 S.W.2d 666; Commercial Union Fire Ins. Co. v. King, 108 Ark. 130, 156 S.W. 445. There is no reason to believe that the Supreme Court of Arkansas would not subscribe to the converse of that proposition.

---

3. Defendant argues that such right did not exist if the Manns in fact had insurance of their own. That may well be true as between First Federal and the Manns in the sense that if the latter had insurance, First Federal might not have been able to require them to pay the premiums on insurance obtained by First Federal. But as against the insurance company the fact the mortgagors had coverage would not affect the validity of the policy issued to the mortgagee. Further, the argument overlooks the fact that the Manns had failed to deliver their policy to First Federal as they were required to do.

■ Granting defendant's premises that Mann wished to have the Charter Oak policy cancelled, that his wife was bound by his wishes, that he directed the Trinity agent, Jackson, to procure a cancellation, and that Jackson's directives to Wright, either oral or written, were sufficiently definite and unequivocal to effect a cancellation, the fact remains that those directives were not given to an agent of Charter Oak but to an agent of First Federal and Charter Oak did not learn of them until after the fire. Cancellation operates prospectively only, and a request for cancellation communicated to the company after the loss would not be effective to absolve the company from liability already accrued. 45 C.J.S. Insurance § 459, supra; American Employers' Liability Ins. Co. v. Fordyce, supra.

It has been held that where an insured mails a letter to the insurance company requesting cancellation, the request is not deemed effective until it is actually received by the company, and if a loss occurs while the request is in the mails, the company is liable. 29 Am.Jur., supra, § 403; 45 C.J.S. Insurance § 458, pp. 116–117, supra; cf. Merrimack Mutual Fire Ins. Co. v. Scott, supra. *A fortiori*, where, as here, the request is not even directed to the insurer in the first instance, it cannot escape liability with respect to a loss occurring prior to the time that it learned of the request indirectly.

### III.

■ The defense based on the prohibition of other insurance contained in the Trinity policy and upon the conduct of Mann in connection with his obtaining payment under that policy does not lack some ethical appeal, but it cannot be sustained legally.

■ An insurance company has the right to stipulate against other insurance on the insured premises, and Trinity exercised that right. Charter Oak did not do so, and, in fact, the pro-rata clause in its policy recognizes that the insured may carry other insurance on the property. Since the Mann property was totally destroyed by the fire, the Arkansas "valued policy" statute, Ark. Stats.1947, Cum.Supp., § 66–3901, is applicable, and the measure of the loss is the aggregate of the concurrent policies in force, with each insurer being liable for the full amount of its policy. 29A Am.Jur. Insurance, § 1552; 45 C.J.S. Insurance § 922, p. 1032, supra; see also Tedford v. Security State Fire Ins. Co., 224 Ark. 1047, 278 S.W.2d 89.

While the prohibition against other insurance contained in the Trinity policy might well have been a good defense to that company if it had refused to pay the Manns, the Court is not able to see how that provision, which was inserted for Trinity's protection, can work to the benefit of Charter Oak. There was no relationship between the companies or between the policies issued by them respectively. Trinity had a policy defense which it waived. Charter Oak has no such defense.

■ Even if it be assumed that Mann by means of false representations inveigled Trinity into making a payment which it otherwise would not have made, Charter Oak is not helped. The argument that the Manns are "estopped" on account of Mr. Mann's representations that he was not going to make any claim against Charter Oak ignores the principles that estoppels operate only as between the parties and their privies. They do not operate, in general, either for or against third parties. A stranger to the transaction out of which an estoppel arises cannot take advantage of it, at least where he has not changed his position in reliance thereon. 19 Am. Jur. Estoppel, §§ 152–153. Further, even as between the immediate parties, an estoppel cannot be based upon a representation unless the party to whom the representation is made acts thereon to his detriment. Milner v. New Edinburg School District, 211 Ark. 337, 200 S.W.2d 319; Hope Lumber Co. v. Foster & Logan Hardware Co., 53 Ark. 196, 13 S.W. 731.

Here, there is nothing to indicate that Charter Oak ever relied on anything that Mann told the adjuster, Baird, or that Charter Oak ever changed its position in

any way on account of anything that Mann ever said or did. Mann's representations, including the representation contained in his proof of loss, were all made to Trinity or to Trinity's agents. It may be that on account of Mann's representations and conduct Trinity has some cause of action against him, but such representations and conduct do not afford any defense to Charter Oak.

## IV.

Plaintiff is entitled to judgment against Charter Oak for $7,904, plus a penalty of 12 per cent which amounts to $948.48, plus a reasonable attorney's fee. In the Court's opinion the sum of $1,250 is a reasonable fee to be charged against the defendant. This does not mean that the Court necessarily feels that $1,250 is adequate overall compensation for plaintiffs' attorney, but it is the largest amount which the Court is justified in awarding against the insurance company.

Counsel for plaintiffs may submit a precedent for judgment after first securing opposing counsel's approval as to form and computation.