**UNDERWRITERS AT LLOYD'S, LONDON, Plaintiff,**

v.

**Kennith PIKE, Farmer's Mutual Insurance Company of Gentry, and Cornerstone Bank, Defendants.**

**Civ. No. 91–5096.**

United States District Court, W.D. Arkansas, Fayetteville Division.

Jan. 11, 1993.

John C. Everett, Fayetteville, AR, Clayton H. Farnham, Atlanta, GA, Wayne A. Ackerman, Bentonville, AR, for plaintiff.

Kitty Gay, Niblock Law Firm, Fayetteville, AR, for defendant Farmer's Mut.

Ralph C. Williams, Bentonville, AR, for defendant Cornerstone Bank.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is a declaratory judgment action brought by Underwriters at Lloyd's, London (Lloyd's) against a property owner and its insured, Kennith Pike, and Farmers Mutual Insurance Company of Gentry (FMIC) which also issued an insurance policy covering the identical property. The court has

jurisdiction because of the provisions of 28 U.S.C. § 1332 and 28 U.S.C. § 2201. The parties stipulated to the relevant facts and that this court could decide the matter on those stipulations.

Effective March 22, 1990, FMIC issued a policy of insurance to Pike providing insurance coverage in the total amount of $60,000 covering two poultry houses and contents owned by him located in Benton County, Arkansas. On February 28, 1991, Lloyd's issued another policy of insurance to Pike covering the identical property, with total coverage, including contents, of $102,000. On March 24, 1991, the poultry houses and contents were totally destroyed by fire.

Each of the policies contain clauses commonly known as "escape clauses." This court, in an unpublished opinion filed December 10, 1991, held that the two clauses were not mutually repugnant, and because of the differences in the particular clauses involved, that only Lloyd's provided coverage for the losses.[1] Judgment was entered against it in the total amount of $102,000 plus penalties and attorney's fees as provided for by applicable Arkansas law.

The Court of Appeals for the Eighth Circuit after reviewing "Arkansas law *de novo*", reversed this court, concluding that "the FMIC escape clause and the Lloyd's escape clause are mutually repugnant and both policies will share *pro rata* liability." *Underwriters at Lloyd's, London v. Pike*, 977 F.2d 1278, 1280 (8th Cir.1992) (emphasis added). The case was remanded and the Court of Appeals directed that:

> The district court must fix each insurer's *pro rata* liability to Pike.

*Id.*

Thus, the directions to this court by the Court of Appeals appear to be direct and simple, but in attempting to determine how to "fix each insurer's *pro rata* liability to Pike", an oft-heard colloquial expression comes to mind: "That's easy for you to say."

---

1. It would serve no useful purpose to quote the policy language involved or the court's reasoning. For those interested, see the description of the Court of Appeals for the Eighth Circuit in *Underwriters at Lloyd's, London v. Pike*, 977 F.2d 1278 (8th Cir.1992).

In saying that, the court does not by any means intend to be disrespectful, but, instead, that expression is used to point out the difficulties caused by Arkansas statutes and Arkansas law as applied to the facts of this case. In carrying out this apparent easy and simple direction, the question that must first be answered is: "What do you prorate?" That is, by no means, a simple question. That is true because there are a number of possibilities. In the first place, as was pointed out to the Court of Appeals during the appeal by one of the defendant insurance companies, Arkansas is a "valued policy" state. We have had a "valued policy" law with little change since 1889. Ark.Code Ann. 23–88–101 (Repl.1992) provides in pertinent part as follows:

(a) A fire insurance policy, in case of a total loss by fire of the property insured, shall be held and considered to be a liquidated demand and against the company taking the risk, for the full amount stated in the policy, or on the full amount upon which the company charges, collects, or receives a premium.

It has been said by the Arkansas Supreme Court that this law was intended to relieve the insured from the burden of proving the value of his property after its total destruction and to prevent insurance companies from receiving premiums on overvaluations and thereafter repudiating their contracts as soon as it becomes in their interest to do so. *Tedford v. Security Fire Ins. Co.*, 224 Ark. 1047, 278 S.W.2d 89 (1955).

In its brief to the Court of Appeals, in arguing that the court should not, in this case of first impression in Arkansas, hold that the losses should be prorated between the two insurance carriers even if the clauses were found to be mutually repugnant, appellee FMIC, at p. 14, correctly set forth the State of Arkansas law in respect to the valued policy statute as follows:

Arkansas is a valued policy state, which means that the measure of loss 'is the aggregate of the concurrent policies in force, with each insurer being liable for the full amount of its policy.' *Hensley v.*

*Farm Bureau Mutual Insurance Company*, 243 Ark. 408, 420 S.W.2d 76, 79, (1967) citing *Mann v. Charter Oak Fire Insurance Company*, 196 F.Supp. 604 (D.C.Ark.1961), *aff'd.*, *Charter Oak Fire Insurance Company v. Mann*, 304 F.2d 166 (8th Cir.1962).

Then, again at p. 17, appellee FMIC stated:

Some courts hold that mutual escape clauses are repugnant and yield *pro rata* liability. This result—the one advanced by Lloyd's—would be impossible under Arkansas' valued policy law, A.C.A. 23–88–101, since if an insurer is liable at all, it is liable for the full amount of its policy. *See, e.g., Hensley v. Farm Bureau Mutual Insurance Company*, 243 Ark. 408, 420 S.W.2d 76 (1967).

For whatever reason, the Court of Appeals chose to ignore, or at least chose not to discuss, this troublesome aspect of Arkansas law when considered in the context of this case. Thus, what is to be prorated? Is this court to prorate the $102,000 in coverage provided by the Lloyd's policy, the $60,000 coverage of the FMIC policy, or $162,000, the aggregate of both policies or some other amount determined by some other method?

In the briefs of the insurance companies filed after the case was remanded to this court, it is argued that the Court of Appeals, at least by implication, invalidated the Arkansas valued policy law, the reasoning being that, since this "problem" was called to the Court's attention and it chose not to discuss it or render any opinion in respect to it, it must be that the court intended for this court to disregard the valued policy law of Arkansas. It is argued that that must be true since the Court of Appeals in its opinion also said: "An escape clause serves to avoid double recovery by an insured who holds two or more policies covering the same risk, *see Arkansas Poultry [Federation Ins. Trust v. Lawrence*, 34 Ark.App. 45] 805 S.W.2d [653,] at 659 [1991], but does not otherwise suspend an insurance policy's coverage.... Because *pro rata* liability prevents double recovery and does not leave the insured without protection, we conclude there is no

reason to limit our decision to policies issued in the future." *Underwriters*, 977 F.2d at 1280 (emphasis added).

The insurance carriers[2] then argue that since the Court of Appeals has invalidated the Arkansas valued policy law, this court should disregard that law in determining what amount should be prorated between the carriers. Specifically, FMIC argues that the court should determine and prorate the "actual cash value of the loss" citing 16 George J. Couch, *Couch on Insurance 2d*, § 62:1 (Rev.Ed.1983), or, in the alternative the proration should be made on the total coverage provided in the Lloyd's policy of $102,000 in calculating Lloyd's share but utilizing the $60,000 coverage provided by its policy in determining its share. As might be expected, from Lloyd's brief it appears that it "likes" the first suggestion made by FMIC but disagrees with the second.

Another possibility not argued by the insurance carriers is to disregard the valued policy law if it was, in fact, by the Court of Appeals invalidated, and apply the terms contained in the policies, and thus, agreed to by the parties. When that is considered, that gives at least two more alternatives because the policy terms in respect to the loss coverage are substantially different. The FMIC policy covers "the actual cash value (ascertained with proper deduction for depreciation) of the property at the time of loss or damage" and the Lloyd's policy provides that "loss or damage settlements shall be based upon the cost of repairing, replacing or reinstating, whichever is the least, with material of like, kind and quality without deduction for depreciation...." Thus, the FMIC policy seems to cover actual cash value of the property at the time of the loss, and the Lloyd's policy appears to cover replacement costs.

In view of the cases cited in FMIC's brief to the Court of Appeals set forth above, and the additional Arkansas case of *Interstate Fire Ins. Co. v. James*, 252 Ark. 638,

480 S.W.2d 341 (1972), a good argument can be made that it is this court's duty in this diversity action to follow Arkansas law and to aggregate the policy limits and, thus, prorate the sum of $162,000.

The court does not believe, as the insurance carriers argue, that it was the intent of the Court of Appeals to invalidate and abrogate Arkansas' valued policy law. Surely, it would not have done so without at least mentioning the statute and discussing FMIC's argument to at least some degree. The court believes that to be true even though there is a good argument that application of the valued policy law would, contrary to what the Court of Appeals said, result in double recovery.

However, the court doubts that the failure to address the effect of the Arkansas valued policy law and the cases interpreting it indicates that the Court of Appeals intended to direct this court to disregard Arkansas law. Instead, it is likely that the court, in reviewing "Arkansas law *de novo*" simply failed to recognize the possible affect of the Arkansas valued policy statute and the cases interpreting it which seem to require, at least on first reading, that the policies be aggregated or "stacked."

Be that as it may, the trial court in *Mann*, an opinion written by long-time Court of Appeals Judge J. Smith Henley (now on senior status) when he was a trial judge, in ruling on the effect of concurrent insurance policy while applying Arkansas law, stated:

> Since the *Mann* property was totally destroyed by the fire, the Arkansas "valued policy" statute, Ark.Stat.1947, Cum. Supp. § 66–3901 is applicable, and the measure of the loss is the aggregate of the concurrent policies in force, with each insurer being liable for the full amount of its policy. (citing cases).

*Mann*, 196 F.Supp. at 610. That exact language was picked up, quoted with approval and adopted in *Hensley, supra.*

**2.** The attorney for the property owner, inexplicably, does not cite the Arkansas cases which at least arguably require that the policy limits be aggregated, but simply contends that the court should prorate between the two carriers the sum of $102,000, calling that sum, without explanation, the replacement value of the property.

In spite of what those cases say, the court notes from a careful reading of them that they are not on point because none of them involve the insuring with more than one policy one insurable interest by one insured. Instead, in each of those cases, the property owner or one of several property owners, had insured his or her insurable interest in the property and had obtained an insurance policy to cover that interest, and then another individual or entity with a separate insurable interest had also obtained a policy of insurance insuring that different interest. In spite of the all-inclusive language of those cases, this court doubts that the Arkansas Supreme Court, when squarely faced with this issue, would allow what is clearly and blatantly a double recovery of the loss of one insurable interest.[3] To do so would be to allow something akin to a lottery or wager. One property owner with one insurable interest could obtain multiple policies insuring the property at its full value and then wait for (and perhaps hope for) a fire, with all of the attendant temptation to "help the odds."

For these reasons, the court will not aggregate the policy limits and prorate the sum of $162,000. That leaves at least two other viable alternatives that must be discussed.

As the insurance carriers urge, with support from other jurisdictions, one alternative is to determine the actual loss of the property owner and award insurance coverage in that amount. In *Couch on Insurance 2d*, § 62:1 (footnotes omitted) it is said:

> As a general rule, the recovery by an owner, where several insurance policies exist on the same property and amount in the aggregate to more than its value, is restricted to the actual loss, as the

contract is one of indemnity only. The existence of multiple policies of insurance does not increase the right of the insured to recover for the loss or give him the right to recover more than once therefor.

However, that method totally disregards the Arkansas valued policy statute, something that this court does not believe that it is permitted to do in this diversity action, nor for the reasons stated above, does it believe that it has been directed to do so by the Court of Appeals. Instead, what the insured received, by law, when he purchased the FMIC policy was a right to recover the sum of $60,000 if the insured property was totally destroyed by fire, and, when the Lloyd's policy was issued, because of the law, Lloyd's agreed to pay, in case of total loss, the sum of $102,000. Thus, it does not seem to be "right," "fair," or in compliance with Arkansas law for the court to disregard the valued policy law. Otherwise, the insured would be penalized dramatically because he had two insurance policies covering the insured property and because the Court of Appeals determined that the "insurers *pro rata* liability to Pike" must be determined by this court.

Before the appeal, Pike had a judgment against a substantial and solvent insurance company in the total amount of $102,000 plus 12% penalties and attorney's fees as provided for by Arkansas law and, if the valued policy law is disregarded, his recovery would apparently be reduced to an amount considerably less than the judgment.[4]

Before the case was appealed, irrespective of whether this court determined that the FMIC policy or the Lloyd's policy applied, the insured would have received either, depending on which policy covered the

---

3. However, at least one court has seemed to hold that to be permissible. *See Millers' Mut. Ins. Ass'n v. LaPota*, 197 So.2d 21 (Fla.App. 1967). *See* the discussion of the affect of valued policy statutes in *Couch on Insurance 2d*, § 62:28.

4. Because it did not appear to be relevant at the time, the parties did not stipulate to either actual cash value of the property, or its replacement

cost, and the court did not ask them to do so. In its brief to this court after remand, Lloyd's, after recognizing that this was probably not the proper way to get this evidence before the court, attached an affidavit containing a letter setting forth an appraisal indicating that the actual cash value of the destroyed property was $76,500.

 

loss, the sum of $60,000 or $102,000. In this case of concurrent coverages, the court believes that it is "right" and "proper" for this court to determine that Mr. Pike should not be penalized by the case being reversed and remanded, and the insured should be awarded from the two carriers the sum of $102,000 plus penalties and attorney's fees. If the case had not been reversed and remanded, that is the amount that Mr. Pike would have received. Additionally, both insurance companies had insured the property and had billed and accepted premiums for, and had agreed to pay, in the case of total loss, the face amount of the policies.

In view of the Arkansas valued policy statute, the court determines that, under the circumstances of this case, the insured should receive no less than the greater of the face amounts of the two insurance policies in effect at the time of the loss.

As directed by the Court of Appeals, the sum of $102,000 plus statutory penalties in the amount of $12,240.00 and a reasonable attorney's fee to be subsequently determined shall be prorated between FMIC and Lloyd's. Each shall pay the proportion of the loss that the amount of the respective policy limits bear to the sum of the insurance coverages provided on the property. Lloyd's coverage of $102,000 is 63% of the total coverage of $162,000, and FMIC's portion is 37% of the amount to be prorated.

Thus, a judgment will be entered ordering Lloyd's to pay 63% of the "loss" or $64,260.00 plus that same percentage of the penalty and attorney's fee, and FMIC shall pay 37% of the "loss" or $37,740.00 plus its share of the penalty and attorney's fee.

This result not only seems to be "fair," but this court believes that it is the only logical result that could be reached in view of the rather complex effect of Arkansas law discussed above. This will mean that the property owner will receive the exact amount for his loss that he would have received and that he contracted to receive when he obtained the second policy of insurance issued by Lloyd's. It also means that neither of the insurance carriers will have paid the total amount of the insurance coverage provided and charged for by each of them. In fact, the result will be that each of the insurance carriers will have paid only approximately 63% of the amount of insurance provided by the policies issued by the companies and paid for by the insured.