MICHAEL A. STEWART, Plaintiff-Appellant, v. REPUBLIC INSURANCE
CORPORATION, Defendant-Appellee.

Fourth District    No. 4—93—1129

Argued June 22, 1994.—Opinion filed November 15, 1994.—Rehearing
denied December 13, 1994.

Maurice J. Barry (argued), of Ostling, Ensign, Barry & Glenn, of Bloom-
ington, for appellant.

Kevin P. Jacobs (argued), of Costigan & Wollrab, P.C., of Bloomington,
for appellee.

JUSTICE GREEN delivered the opinion of the court:

On February 19, 1992, plaintiff Michael A. Stewart filed suit in the circuit court of McLean County against defendant Republic Insurance Corporation to recover under a dwelling insurance policy issued by defendant for damages plaintiff incurred when his dwelling and contents were destroyed by a fire on September 12, 1991. Defendant answered alleging that the policy in question had been cancelled for nonpayment of premiums before the fire. On December 2, 1993, the court entered summary judgment for defendant. Plaintiff has appealed. We affirm.

Section 2—1005(c) of the Code of Civil Procedure provides, in part, that the circuit court shall grant summary judgment to a party seeking that relief "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1992).) Defendant maintains, and the circuit court agreed, that here the record before the circuit court conclusively showed that it properly cancelled plaintiff's policy before the fire. Plaintiff disagrees, maintaining that the record shows (1) at least a question of fact exists as to whether he received a cancellation notice receipt which was a requirement for cancellation; and (2) defendant failed to mail a copy of a notice of the cancellation to plaintiff's insurance broker or agent as required by statute to effectuate a valid cancellation.

■ Both issues concern the operation of section 143.14 of the Illinois Insurance Code (Code) which, at all times pertinent, provided:

"Notice of cancellation. *No notice of cancellation* of any policy of insurance, to which Section 143.11 applies, *shall be effective unless mailed by the company to the named insured and the mortgage or lienholder*, at the last mailing address known by the company. The company shall maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service. A *copy* of all such notices *shall be sent to the insured's broker if known, or the agent of record, and to the mortgagee or lienholder*, if known, at the last mailing address known to the company." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 73, par. 755.14.

■ Plaintiff's first contention is based upon his affidavit that he did not receive any section 143.14 notice of cancellation. Defendant responds that under *Bates v. Merrimack Mutual Fire Insurance Co.* (1992), 238 Ill. App. 3d 1050, 605 N.E.2d 626, section 143.14 requires proper mailing of notice but does not require that the notice be received. Here, affidavits by defendant's agents set forth a timely and

proper mailing to plaintiff. We hold that under *Bates* those unrefuted affidavits satisfy the requirement for the requirements of section 143.14 as far as notice to the insureds is concerned.

In *Bates*, a judgment on a jury verdict for an insured suing on a similar type of insurance policy as here was reversed by this court. The issue was whether the policy had been cancelled before the fire. The evidence showed, as here, that notice of cancellation had been properly mailed to the insured but evidence indicated it had not been received. This court stated that the statutory mailing requirements for the notice had been complied with and lack of receipt was "not relevant" because the insurer's "responsibility was mailing, not delivery." (*Bates*, 238 Ill. App. 3d at 1054, 605 N.E.2d at 629.) Plaintiff points out that in *Bates*, the insured did receive some notice of cancellation through a memo apparently mailed after the formal statutory notice had been sent. We do not interpret *Bates* as relying on that memo to be significant to the result reached.

Plaintiff correctly points out that the record shows that no copy of the section 143.14 notice was sent to defendant's broker or agent. This brings into play the curious language of section 143.14 of the Code. Its first sentence states that "[n]o notice of cancellation *** shall be effective unless" notice of cancellation is "mailed by the company" to the insured and mortgagee (Ill. Rev. Stat. 1989, ch. 73, par. 755.14), which was done here. Then the last sentence of the section does state that a copy of the notice "shall be sent" to the broker or agent and the mortgagee or lienholder (Ill. Rev. Stat. 1989, ch. 73, par. 755.14). That was not done here but no statement is made that sending that copy of the notice is a condition of effective cancellation of the policy, as is the sending of the notice of cancellation to the insured and mortgagee or lienholder.

In determining legislative intent, courts first consider the statutory language. (*Cunningham v. Huffman* (1993), 154 Ill. 2d 398, 405, 609 N.E.2d 321, 324-25.) Prior to the enactment of Public Act 79—686 (Pub. Act 79—686, § 1, eff. January 1, 1976 (1975 Ill. Laws 2152, 2154)), the predecessor to section 143.14 of the Code provided that "[n]o notice of cancellation *** is effective unless" proper mailing to the insured was made, but no reference was made to sending copies of the notice to anyone. (Ill. Rev. Stat. 1973, ch. 73, par. 755.4.) Public Act 79—686 then provided for an addition to section 143.14 of the Code, which provided that "[a] copy of [the notice sent to the insured] shall be sent to" the insured's insurance agent or broker. Ill. Rev. Stat. 1975, ch. 73, par. 755.14.

Section 143.14 of the Code shall be construed in such a way that every word be given some reasonable meaning. (*Hirschfield v. Barrett*

(1968), 40 Ill. 2d 224, 230, 239 N.E.2d 831, 835.) The use of the word "shall," with reference to sending the copy of the notice in Public Act 79—686, must have been intended to have a different meaning than the words indicating that "no notice *** shall be effective unless" contained in the first sentence of section 143.14 of the Code. Ill. Rev. Stat. 1989, ch. 73, par. 755.14.

■ If the language of section 143.14 of the Code is ambiguous, we should look to the legislative intent (see *Magna Bank v. Comer* (1992), 232 Ill. App. 3d 300, 304, 600 N.E.2d 855, 857) and give effect to the true intent and meaning of the legislature (*People v. Frieberg* (1992), 147 Ill. 2d 326, 345, 589 N.E.2d 508, 517). Clearly, the prime purpose of section 143.14 as a whole is to protect the insured by giving it notice that the policy is in danger of cancellation and the overdue premium must be paid immediately. Giving the insurance agent notice might encourage the agent to contact the insured and impress upon the insured the jeopardy he or she is facing. However, if the prime purpose of the last sentence of section 143.14 is to do that, the legislature might have required the agents and brokers who receive the notice to contact the insureds. The purpose of the last sentence of section 143.14 may well be to create a procedure which will enable such agents and brokers to keep contact with their customers and maintain a relationship with them.

When the context of the use of the word "shall," which appears in the third sentence of section 143.14 of the Code (Ill. Rev. Stat. 1989, ch. 73, par. 755.14), appears in a context which indicates it is merely permissive it is often so construed. (*Fumarolo v. Chicago Board of Education* (1990), 142 Ill. 2d 54, 96, 566 N.E.2d 1283, 1301; *In re Guardianship of Sodini* (1988), 172 Ill. App. 3d 1055, 1058-59, 527 N.E.2d 530, 532.) We are aware of the rule pronounced in *Newkirk v. Bigard* (1985), 109 Ill. 2d 28, 33, 485 N.E.2d 321, 323, and *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21, 373 N.E.2d 1332, 1335, that the word "shall" is given a mandatory effect when used with reference to a right or benefit to a person. However, in those cases, unlike here, the word "shall" did not appear in the context of other language in regard to the granting or denial of the same right or benefit which was more mandatory and more clearly a condition to the granting or denial of a right or benefit.

We are convinced that the legislature would have listed notification to the insured's agent or broker as one of the requirements without which no cancellation would be effective if the legislature intended the failure to give that notification to have that effect. Accordingly, we agree with the circuit court that defendant's failure to notify the plaintiff's agent or broker here did not prevent defen-

dant from effectively cancelling plaintiff's dwelling policy before plaintiff's loss occurred here.

The summary judgment for defendant is affirmed.

Affirmed.

JUSTICE LUND, specially concurring:

I concur with Justice Green's opinion. If a contrary conclusion is reached, what implied obligation is placed upon the notified broker or agent? Must the broker or agent also notify the insured? If so, how must the notice be given—by personal contact, by phone, by mail? If by mail, by what kind of mail?

Are we, by judicial fiat, going to create a new cause of action in favor of a nonpaying insured against a broker or agent who fails to give additional notice? If so, perhaps we should write our own legislation dictating responsibility of brokers and agents and adopt it in our decision!

JUSTICE COOK, dissenting:

I respectfully dissent. Section 143.14 of the Code limits the right of an insurance company to cancel a policy of insurance. Section 143.14 was not complied with here, and the attempted cancellation should be held ineffective.

I agree with the majority the purpose of section 143.14 of the Code is to protect the insured, by making it reasonably certain that the insured will receive notice of cancellation. I also agree that, under *Bates*, an insurance company may comply with section 143.14 by showing the notice was mailed, and need not show that it was received. The legislative purpose was to strike a reasonable balance—not to require expensive and sometimes difficult proof of actual service, accompanied by delays which might prejudice the insurance company, but still to do whatever could easily be done so that the insured would in fact receive notice.

Notice to the agent makes it likely the insured will receive and understand a notice of cancellation. Insureds change addresses, get married, and change jobs, but the insurance company will always know how to contact the agent. Insureds may not recognize what a form is or what they should do after they receive it, but agents do know those things. The first thing an insured who receives a notice of cancellation is likely to do is contact his agent. Notice to the agent is an important backup to the notice sent to the insured. Because section 143.14 requires that a copy of the notice "shall be sent" to the agent, and because notice to the agent is important in carrying out

the purposes of the section, I would not allow a policy cancellation to be effective without copying the agent.

An affidavit of an insurance company assistant vice-president in this case states that the company follows a uniform procedure in sending these notices, and that procedure was followed here. What right did the insurance company have to ignore the statutory directive that a copy be sent to the agent? The majority suggests that, because different language is used, different meanings must be given to the first sentence of section 143.14, which contains the language that "[n]o notice *** shall be effective unless," and to the third sentence, which merely says that a copy of the notice "shall" be sent to the agent. (Ill. Rev. Stat. 1989, ch. 73, par. 755.14.) I respectfully suggest that the majority's reading gives no meaning at all to the third sentence. We now read the third sentence to say that an insurance company need not give notice to the agent, even though the legislature said that notice "shall" be given.

The majority discounts the fact that notice to agents is likely to result in notice to insureds, with the argument that if the legislature had so intended it would have specifically required agents and brokers who receive the notice to then contact the insureds. Justice Lund's special concurrence asks how the agent must give notice to the insured, if a requirement to do so is imposed. The beauty of notice to the agent, however, is that it achieves the legislative purpose by economic self-interest, not by inflexible statutory requirements. An agent will contact an insured because it is to the agent's economic benefit to do so. The agent may be expected to use the best method available to make that contact, whether it be a telephone call to a relative, a visit to the property, or leaving a note on a door. Despite Justice Lund's argument *ad horribilem*, I do not suggest that an agent who is unable to contact an insured, or in fact makes no attempts to contact him, is subject to any new cause of action. There will be times when insureds will not know of the cancellation, but if their agents have been notified, at least what can easily be done will have been done.

The majority's argument that the purpose of the third sentence is only to enable the agent to "maintain a relationship" with his customers is difficult to understand. Agents are, in general, able to maintain relationships with their customers without section 143.14. Section 143.14 does enable the agent to maintain contact or a relationship in the specific circumstance of cancellation, but that is an argument for requiring the insurance company to comply with the section. Contact between agent and insured is desirable at the time a policy is cancelled; the legislature has required that the agent be in a

position to make that contact, and we should not allow insurance companies to cancel policies without the knowledge of the agents who actually deal with the insureds.