MARKETVIEW MOTORS, INC., Plaintiff-Appellant, v. COLONIAL INSURANCE COMPANY OF CALIFORNIA, Defendant-Appellee.

Fourth District No. 4—95—0379

Argued October 18, 1995.—Opinion filed January 31, 1996.

John E. Maloney (argued), of Maloney & Davis, of Urbana, for appellant.

John M. Sturmanis (argued), of Thomas, Mamer & Haughey, of Champaign, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In November 1994, plaintiff, Marketview Motors, Inc. (Marketview), a car dealership that held a lien on a certain vehicle, filed an action for declaratory judgment against defendant, Colonial Insurance Company of California (Colonial), seeking a judicial determina-

tion that the vehicle was covered under an insurance policy issued by defendant. In April 1995, the trial court granted summary judgment for Colonial, finding it had given Marketview proper notice of cancellation of the insurance policy on the vehicle, in accordance with section 143.15 of the Illinois Insurance Code (Code) (215 ILCS 5/143.15 (West 1992)). Marketview appeals, arguing that section 143.15 of the Code requires an insurance company to provide at least 10 days' actual notice before cancellation due to nonpayment of premiums becomes effective. We agree and reverse.

## I. BACKGROUND

In February 1994, Lawrence T. Miller purchased a 1987 Chevrolet Monte Carlo on which Marketview retained a lien. Miller procured an automobile insurance policy from Colonial for the car. Subsequently, Miller failed to pay the premium due on the policy and, on March 17, 1994, Colonial mailed Marketview, as the lien holder, a notice of cancellation of the policy as required by section 143.14 of the Code (215 ILCS 5/143.14 (West 1992)).

The notice purported to cancel the policy as of 12:01 a.m. on March 28, 1994. At approximately 5:15 a.m. on March 28 or March 29, 1994 (the record reflects disagreement between the parties as to the date of the accident), the 1987 Monte Carlo was involved in an accident which, Marketview alleges, resulted in a $4,427.08 loss. As the designated loss payee of the policy, Marketview demanded payment from Colonial, pursuant to Colonial's claim procedures. However, Colonial denied coverage, asserting that it had cancelled Miller's policy as of 12:01 a.m. on March 28, 1994, and had provided all necessary parties with proper notice of the cancellation.

After Marketview filed suit against Colonial for coverage under the policy, each party filed a motion for summary judgment. In April 1995, the trial court conducted a hearing on the motions and ordered summary judgment in favor of Colonial. The court concluded that the policy was effectively cancelled at 12:01 a.m., on March 28, 1994.

## II. ANALYSIS

■ Section 143.15 of the Code provides as follows:

"All notices of cancellation of insurance as defined in subsections (a), (b) and (c) of Section 143.13 must be *mailed* at least 30 days prior to the effective date of cancellation to the named insured and mortgagee or lien holder, if known, at the last mailing address known to the company. All notices of cancellation shall include a specific explanation of the reason or reasons for cancellation. *However, where cancellation is for nonpayment of premium, at least 10 days['] notice* of cancellation *shall be given.*" (Emphasis added.) 215 ILCS 5/143.15 (West 1992).

Marketview argues that section 143.15 of the Code should be interpreted to provide 10 days' *actual* notice of cancellation because interested parties must be allowed sufficient time to arrange for the protection of their interests in property. Specifically, Marketview asserts that had it been afforded 10 days' actual notice, it would have either encouraged Miller to pay his premium, advanced him the premium, or obtained other insurance coverage on the vehicle pursuant to the loan agreement with Miller.

■ A basic principle of insurance law requires an insurance company, when sending a notice of cancellation, to strictly comply with policy provisions and any applicable statute. (*Bates v. Merrimack Mutual Fire Insurance Co.* (1992), 238 Ill. App. 3d 1050, 1051, 605 N.E.2d 626, 627; *Green v. J.C. Penney Auto Insurance Co.* (7th Cir. 1983), 722 F.2d 330 (interpreting Illinois law); *Conley v. Ratayzcak* (1980), 92 Ill. App. 3d 29, 34, 414 N.E.2d 500, 503; 43 Am. Jur. 2d *Insurance* §§ 382, 388 (1982).) Accordingly, the issue in this case is whether section 143.15 of the Code requires an insurance company to provide at least 10 days' actual notice before cancellation due to nonpayment of premiums becomes effective. For the reasons that follow, we hold that it does.

In their briefs, both parties discuss *Stewart v. Republic Insurance Corp.* (1994), 267 Ill. App. 3d 361, 642 N.E.2d 889, in which this court interpreted the notice provision contained in section 143.14 of the Code (Ill. Rev. Stat. 1989, ch. 73, par. 755.14 (now 215 ILCS 5/143.14 (West 1992))). The language in section 143.14 establishes who is entitled to notice, as follows: "[n]o notice of cancellation *** shall be effective unless mailed by the company to the named insured and the mortgage or lien holder[ ] at the last mailing address known by the company." (Ill. Rev. Stat. 1989, ch. 73, par. 755.14 (now 215 ILCS 5/143.14(a) (West 1992)).) Because section 143.14 does not set forth the time frames insurers must adhere to, *Stewart* provides little assistance to this case.

The legislative history of section 143.15 of the Code provides little indication of what the legislature intended with respect to this notice provision. (See Pub. Act 79—686, § 1, eff. January 1, 1976 (1975 Ill. Laws 2152); Pub. Act 80—1128, eff. July 1, 1978 (1977 Ill. Laws 3376).) However, *Tunprasert v. Prince* (1975), 33 Ill. App. 3d 710, 712, 342 N.E.2d 244, 245, addresses the apparent precursor to section 143.15 of the Code and gives some insight into the evolution of the 10-day notice provision. In its earlier version, this provision was extremely specific as to the notice requirement. (Ill. Rev. Stat. 1971, ch. 73, par. 755.1b.) The statute read, "where cancellation is for non-payment of premium, at least 10 days' notice of cancellation

shall be mailed or delivered to the named insured. *Proof of mailing of notice of cancellation to the named insured at the address shown in the policy, shall be sufficient proof of notice."* (Emphasis added.) (Ill. Rev. Stat. 1971, ch. 73, par. 755.1b.) The legislature repealed this section in 1976 and substituted a new section addressing cancellation of policies due to unpaid premiums. Significantly, this new section was changed to read, "[w]here cancellation is for nonpayment of premium at least 10 days['] notice of cancellation shall be given." (Ill. Rev. Stat. 1975, ch. 73, par. 755.14.) Later, in the 1979 version of the statute, the legislature added the word "[h]owever" at the beginning of this provision, indicating that cancellations due to the nonpayment of premiums are to be handled differently than the cancellations discussed in the first several lines of the section. Ill. Rev. Stat. 1979, ch. 73, par. 755.15.

Additionally, the fact that the legislature specifically uses the word "mailing" earlier in section 143.15 of the Code, referring to cancellation due to reasons other than nonpayment of premiums, strongly indicates that a cancellation due to the nonpayment of premiums is to be handled differently. The plain language of the clauses within the section differentiates between cancellations requiring, on the one hand, 30-days' advance *mailing* and, on the other hand, 10-days' *notice*; in the latter provision, the verb "mail" is conspicuously absent.

We conclude that the legislature indeed intended to shift from a mailing requirement to a requirement of actual notice with respect to cancellations for nonpayment of premiums.

Little Illinois case law exists on this particular portion of section 143.15 of the Code. In *Conley*, the appellate court for the second district strongly implied that actual notice may be required:

> "[I]nsurance policies are 'cancelled' *** when the insurer sends a written notice in which it positively and affirmatively indicates to the insurer [*sic*] its intention that the policy shall cease to be binding as such upon the expiration of a stipulated number of days *from the time when this intention is made known to the insured."* (Emphasis added.) *Conley*, 92 Ill. App. 3d at 33, 414 N.E.2d at 503.

Major treatises on insurance law, as well as legal encyclopedias, state that (as a general rule) where an insurance policy provides that the policy may be cancelled by giving a specified number of days' notice, without stipulating a form or way such notice must be given, *actual receipt of notice* by the insured is a condition precedent to cancellation. (6A J. Appleman & J. Appleman, Insurance Law & Practice § 4186, at 551 (rev. 1972), § 4186, at 204-05 (1994 Supp.); 45 C.J.S. *Insurance* § 498, at 254 (1993); Annot., 40 A.L.R.4th 867, §§ 2[a],

5 (1985).) Accordingly, courts throughout the country have held that provisions similar to the one at issue do require actual notice. See, e.g., *Rocque v. Co-Operative Fire Insurance Association* (1981), 140 Vt. 321, 438 A.2d 383; *German Union Fire Insurance Co. v. Fred G. Clarke Co.* (1911), 116 Md. 622, 82 A. 974; *Mann v. Charter Oak Fire Insurance Co.* (E.D. Ark. 1961), 196 F. Supp. 604, aff'd on other grounds (8th Cir. 1962), 304 F.2d 166; *Scanlon v. Empire Fire & Marine Insurance Co.* (Idaho App. 1990), 117 Idaho 691, 692-93, 791 P.2d 737, 738-40; *Nunley v. Florida Farm Bureau Mutual Insurance Co.* (Fla. App. 1986), 494 So. 2d 306, 307.

■ These sources all indicate that, in such cases, the time of notice specified by a statute or policy begins to run when notice is received, unless the language of the statute specifically states that the time begins upon mailing. (6A J. Appleman & J. Appleman, Insurance Law & Practice § 4186, at 551 (rev. 1972); 45 C.J.S. *Insurance* § 498, at 254 (1993).) The common thread in all of these cases is the use of the phrase "notice shall be *given*" versus "mailed" in the applicable statute or policy. For example, in *DiProspero v. Nationwide Mutual Fire Insurance Co.* (1973), 30 Conn. Supp. 291, 294-95, 311 A.2d 561, 563, the court held that, even where facts show that notice was mailed, if a statute or the policy demands that notice be "given," and the notice is not received, the cancellation is invalid. See also *Powell v. Lititz Mutual Insurance Co.* (5th Cir. 1969), 419 F.2d 62, 64 (holding that more than mere mailing of notice was required where policy stated that insurer must "give" the insured written notice); *Mann*, 196 F. Supp. at 609 (holding that notice must be communicated to the insured or his agent and, if not, cancellation is ineffective).

Some courts which have required actual notice when such language was at issue have further concluded that a notice which does not provide the insured with the requisite number of days' notice is not invalid, but the cancellation date of the policy is postponed to allow for the expiration of the prescribed number of days' notice. (*Scanlon*, 117 Idaho at 694, 791 P.2d at 740; *Nunley*, 494 So. 2d at 307.) We adopt this position and hold that the effective date of cancellation is to be determined based on the date notice was received.

In so holding, we note that the purpose of such a notice provision is to inform the insured that his policy is going to be cancelled in order to afford him time to determine what course to pursue and to take measures to protect himself. (See *Hartford Fire Insurance Co. v. Tewes* (1907), 132 Ill. App. 321, 325; *Conley*, 92 Ill. App. 3d at 33, 414 N.E.2d at 503 (observing that the purpose of a notice provision is to afford the insured time to obtain other insurance).) An actual notice requirement will also prevent cancellation where the insured has no

knowledge that her payment has not reached the insurer, or serve as a reminder that a premium payment is late, where the insured has no intention of letting the policy lapse. In addition, an actual notice requirement will protect interested parties, such as mortgagees and lienholders, who are probably otherwise not aware that premiums are not being paid and may not become aware of such information in time to protect their interests.

In its cross-motion for summary judgment, Marketview admitted for the limited purposes of that motion that it received notice of cancellation. However, nothing in the record demonstrates when Marketview actually received notice. The pleadings also indicate disagreement between the parties as to when the accident causing the loss occurred. Ascertaining the date the policy was effectively cancelled (*i.e.*, when Marketview's 10 days' actual notice expired) and the date the accident actually occurred are factual issues the trial court must resolve.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

GARMAN and KNECHT, JJ., concur.